Mr. John P. R. Washington, II Assistant Executive Director Correctional Privatization Commission 4030 Esplanade Way, Suite 315 Tallahassee, Florida 32399-0950
Mr. Harry K. Singletary, Jr. Secretary Department of Corrections 2601 Blair Stone Road Tallahassee, Florida 32399-2500
Dear Mr. Washington and Mr. Singletary:
The Correctional Privatization Commission and the Department of Corrections have asked substantially the following question:
Are facilities run by the Correctional Privatization Commission subject to medical audits by the Department of Corrections?
In sum:
As the Department of Corrections has ultimate legal custody of inmates incarcerated anywhere in this state and private prison contractors are required to provide medical care at least equal to that provided to inmates in comparable public correctional facilities, medical audits by the Department of Corrections would be necessary to ensure that all inmates receive the specified level of medical care.
The Correctional Privatization Commission (commission) is created to contract with private contractors to design, finance, acquire, lease, construct, and operate private correctional facilities.[1]
The commission is a separate budget entity created within the Department of Management Services (DMS) for administrative purposes only, and is not subject to control, supervision, or direction by DMS, except to the extent provided in Chapters 110, 216, 255, 282, and 287, Florida Statutes, for agencies of the executive branch.[2]
In negotiating with a contractor for a private correctional facility, the commission must determine that the contractor has the qualifications, experience and management personnel necessary to carry out the terms of the contract, and the ability to comply with applicable laws, court orders, and national correctional standards.[3] The contract must indemnify the state and the Department of Corrections (DOC) against any and all liability, including, but not limited to, civil rights liability.[4] Further, the contract must require that proposed facilities and management plans for inmates meet applicable American Correctional Association standards and the requirements of all applicable court orders and state law.[5]
The commission is required to establish operations standards for correctional facilities subject to a contract, but is specifically allowed to "waive any rule, policy, or procedure of the department [DOC] related to the operations standards of correctional facilities that are inconsistent with the mission of the commission to establish cost-effective, privately operated correctional facilities."[6] The contract, however, must make the contractor responsible for a range of dental, medical, and psychological services "at least equal to those provided by thedepartment in comparable facilities."[7] (e.s.) In order to assure compliance, the contract must provide for a contract monitor, to be appointed and supervised by the commission, but whose salary and expenses are to be reimbursed to the commission by the contractor.[8]
Contractors are liable in tort for the care and custody of inmates under their supervision and may not raise sovereign immunity as a defense.[9] Employees of a contractor who operates and maintains a private correctional facility must possess training requirements that meet or exceed the requirements for similar employees of DOC.[10] Further, employees who are responsible for the supervision of inmates are recognized as having the same legal authority to assert nondeadly and deadly force as possessed by employees of DOC.[11]
Certain powers and duties are not delegable to the contractor, such as the authority to make a final determination on the custody classification of an inmate.[12] The contractor may not choose the facility in which an inmate is assigned, but may request in writing that an inmate be transferred to a facility operated by DOC. The commission, the contractor and DOC are required to develop and implement a cooperative agreement for transferring inmates between DOC and private facilities.[13] Further, disciplinary rules and penalties applicable to inmates in a private facility may not differ from those that apply to inmates in DOC facilities.[14] Other nondelegable powers include taking final disciplinary action affecting the liberty of an inmate, making decisions that affect the length of an inmate's sentence, and determining an inmate's eligibility for release.[15]
Section 957.09(2), Florida Statutes, provides:
"The provisions of this chapter are supplemental to the provisions of ss. 944.105 and 944.710-944.719. However, in any conflict between a provision of this chapter and a provision of such other sections, the provision of this chapter shall prevail."
While section 944.715(2), Florida Statutes, sets forth powers that may not be delegated to private correctional facilities substantially similar to the nondelegable powers prescribed in section 957.06, Florida Statutes, it further clarifies that "[i]nmates incarcerated in a private correctional facility are in the legal custody of the department." There is no legislative statement transferring legal custody of inmates to the commission, rather section 957.08, Florida Statutes, requires DOC to transfer and assign prisoners to each private correctional facility. It would appear, therefore, that DOC retains ultimate responsibility for legal custody of inmates who have been committed by a court to the custody of the department.[16]
While section 957.04(1)(e), Florida Statutes, allows the commission to waive any DOC rule, policy, or procedure related to operations standards of correctional facilities that is inconsistent with the mission of the commission to establish cost-effective facilities, there is no statutory authority for the commission to ignore statutory requirements or court orders regarding the operation of facilities where inmates are housed. Thus, the ultimate responsibility for the safety and welfare of inmates cannot be compromised by the commission in the name of saving money. Moreover, as noted above, a contractor for a private facility must provide medical care at the same level as that provided by the department.
You recognize that DOC's authority to conduct security audits pursuant to section 944.151, Florida Statutes, includes private correctional facilities under contract with the commission. There are other provisions in Chapter 944, Florida Statutes, that would also apply to private correctional facilities. For instance, section 944.31, Florida Statutes, charges the inspector general for DOC with the duty of inspecting the penal and correctional systems of the state, specifically directing inspection of "each correctional institution or any place in which state prisoners arehoused, worked, or kept within the state" for such things as physical conditions, sanitation, safety and comfort.[17] (e.s.) Thus, the inspector general possesses the authority to make inspections of all places in which state prisoners are housed or kept to ensure their safety and comfort.
When read together, Chapters 944 and 957, Florida Statutes, provide a system for the incarceration of inmates in both public and private facilities. While the commission has been authorized to contract for the operation of private facilities in a cost effective manner, this in no way abrogates the department's ultimate responsibility for and legal custody of incarcerated individuals.
Accordingly, it is my opinion that the department's ultimate responsibility for the legal custody of inmates would allow medical audits by the department to ensure that inmates in private correctional facilities receive medical care at a level received by inmates in comparable departmental facilities. The Correctional Privatization Commission, its private contractors, and the Department of Corrections should work together to ensure that inmates receive the medical care required by law and that medical audits are performed in an efficient and effective manner.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tls
[1] Section 957.03(1), Fla. Stat.
[2] Section 957.03(6), Fla. Stat.
[3] Section 957.04(1)(a), Fla. Stat.
[4] Section 957.04(1)(b), Fla. Stat.
[5] Section 957.04(1)(d), Fla. Stat.
[6] Section 957.04(1)(e), Fla. Stat.
[7] Section 957.04(1)(f), Fla. Stat.
[8] Section 957.04(1)(g), Fla. Stat.
[9] Section 957.05(1), Fla. Stat.
[10] Section 957.05(2)(a), Fla. Stat.
[11] Section 957.05(2)(b), Fla. Stat.
[12] Section 957.06(1), Fla. Stat.
[13] Section 957.06(2), Fla. Stat.
[14] Section 957.06(3), Fla. Stat.
[15] See, ss. 957.06(4)-(8), Fla. Stat.
[16] See, section 944.17(1), Fla. Stat., providing that each prisoner sentenced to the state penitentiary is committed by the court to the custody of DOC. Cf., s. 957.14, Fla. Stat., providing, if any event occurs that involves the noncompliance with or violation of contract terms and that presents a serious threat to the safety, health, or security of the inmates, employees, or the public, DOC may temporarily assume control of the private correctional facility, with the approval of the commission.
[17] See also, s. 944. 1905, Fla. Stat., authorizing DOC to classify inmates pursuant to an objective classification scheme; s. 944.275, Fla. Stat., allowing DOC to grant deductions from sentences in the form of gain-time in order to encourage satisfactory prisoner behavior; and s. 944.292, Fla. Stat., providing that upon conviction of a felony the civil rights of a convicted person are suspended.